James C. Shah (SBN 260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
**MILLER SHAH LLP**
8730 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

Christopher E. Roberts (SBN 363586)
Email: CRoberts@butschroberts.com
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| JON HANSON, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NATIONWIDE TAX ADVOCATES, INC.<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW Plaintiff, Jon Hanson ("Plaintiff" or "Hanson"), individually, and on behalf of all others similarly situated, through his undersigned counsel, and for his Class Action Complaint against Defendant, Nationwide Tax Advocates, Inc. ("Defendant" or "Nationwide Tax Advocates"), states:

## INTRODUCTION AND BACKGROUND ON THE TCPA

1. The receipt of unwanted telemarketing communications has been, for many years, the top consumer complaint made to state and federal agencies around the country. This case is about stopping incessant telemarketers, like Defendant, from placing calls to the cell phones of Hanson and likely thousands of other persons whose phone numbers were registered on the National Do-Not-Call Registry ("DNC List") and/or who should have been placed on Defendant's Internal Do-Not-Call List ("Internal DNC List").

2. Hanson brings this class action lawsuit against Defendant for improperly placing these calls to persons whose phone numbers were registered on the DNC List, in violation of the TCPA, U.S.C. § 227 *et seq.*, and the TCPA's corresponding regulations.

3. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the Telephone Consumer Protection Act ("TCPA") into law, to protect consumers' privacy rights; namely, the right to be left alone from unwanted telemarketing communications. A leading sponsor of the TCPA described unwanted telemarketing communications as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA affords protections to people, like Hanson, who receive telephone solicitation communications, despite their phone numbers being registered on the DNC List. *See* 47 U.S.C. § 227(c)(3)(A)(iii); 47 C.F.R. § 64.1200(c)(2). The penalty for violating the TCPA is up to $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(c)(5).

5. The TCPA affords special protections for people who, like Hanson, request to be placed on a company's Internal DNC List. Specifically, the TCPA provides that each person who receives more than one call on their cell phone after requesting to be placed on the company's internal do not call list is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d).

6. The problem with receiving unwanted telemarketing communications is a problem that most people in this country, like Hanson, frequently face. For example, in the first three months of 2026 alone, approximately 11.9 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited April 7, 2026).

7. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." *Omnibus TCPA Order*, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

8. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied more than $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this Court original jurisdiction of all civil actions arising under the laws of the United States.

10. This Court has personal jurisdiction over Defendant because Defendant's

principal place of business is in California, Defendant is a California corporation, it transacts business in California, directly markets its services in California, and sells various services in California, and for the reasons otherwise set forth in this Complaint.

11. Defendant has continuous and systematic contacts with the State of California.

12. Hanson was (and is) a resident and citizen of the State of North Dakota at all times relevant to this Complaint.

13. Venue is proper under 28 U.S.C. §§ 1391(b)(2) as a substantial portion of the events giving rise to the claims herein arose in this District, Defendant's principal place of business is in this District, Defendant's registered agent is located in the District and the harms of Defendant's actions occurred, at least in part, in this venue.

14. The Court has jurisdiction over this dispute for these reasons and for the reasons set forth in this Complaint.

## PARTIES

15. At all times relevant to this Complaint, Hanson was, and is still, the owner of a cell phone, with a phone number of 580-XXX-5594.

16. Hanson's phone number was registered on the DNC List on February 28, 2010, for the purpose of being left alone by telemarketers.

17. The monthly bill associated with Hanson's phone number is issued in his name, and not in the name of a business.

18. Hanson uses his phone primarily for personal purposes, such as communicating with friends and family members.

19. Defendant Nationwide Tax Advocates, Inc. is a California corporation with its principal place of business in California. Defendant has been authorized and in good standing to transact business in California and throughout the United States at all times material to this Complaint.

20. Defendant's business registration with the California Secretary of State

states that Defendant's "Type of Business" is "Tax Debt Resolution."

21. Defendant's website is http://nwtaxad.com.

22. Defendant's website states it has "helped thousands reduce or eliminate their tax debts."

23. Defendant's website includes various pages, including a page discussing an "IRS Fresh Start" program.

24. On information and belief, Defendant charges consumers a fee for its tax resolution services.

25. Defendant markets its services by, in part, placing telemarketing communications, to consumers such as Hanson and the putative class members.

26. Hanson and the putative class members did not provide "prior express written consent" (as that term is defined in 47 C.F.R. § 64.1200(f)(9)) or any form of consent to be contacted on their phones by Defendant or anyone acting on its behalf.

**DEFENDANT'S CALLS TO PLAINTIFF**

27. On March 6, 2024, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number. The person called and identified themselves as "Ed" with "Nationwide Tax." "Ed" then began asking a series of questions related to tax debt and discussed the various tax relief services offered by Defendant. "Ed" further confirmed that his company was "Nationwide Tax Advocates" and that they are based out of California. "Ed" advised that an initial "investigation" would cost $475, and that Hanson might have to pay additional amounts for Defendant's services. Hanson advised he was not interested and would call Defendant back if he was interested in its services.

28. The phone number that appeared on Hanson's phone in connection with the March 6, 2024, call showed that the call originated from phone number 562-312-3471.

29. On March 19, 2024, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number. The phone number that appeared on Hanson's phone identified the phone call as originating from phone number 949-368-2385. Hanson heard a person on the other line, and the line got disconnected.

30. Hanson called back the 949-368-2385 number. He immediately heard a recording that began, "Thank you for calling Nationwide Tax Advocates. . . ."

31. On April 1, 2024, at approximately 2:20 p.m. PST, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number. The phone number that appeared on Hanson's caller ID was 714-782-7770.

32. Phone number 714-782-7770 is a phone number that is used by Defendant, and which appears on Defendant's website.

33. Hanson called the number back and a greeting identified "Nationwide Tax Advocates."

34. On April 24, 2024, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number. The caller identified himself as "Richard" with "Nationwide Tax Advocates." "Richard" attempted to sell Hanson Defendant's tax relief services.

35. On April 25, 2024, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number, this time in the form of a text message. The text message appeared as originating from phone number 949-267-7393. The text message stated that the message was sent by "Ed" with "Nationwide Tax" and that he could be contacted at 714-782-7770, extension 407.

36. On April 26, 2024, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number, this time in the form of a text message. The text message appeared as originating from phone number 949-267-7393. The text message stated that it was from "Nationwide Tax Advocates" and asked, "Still wanting relief?" The text message also left a callback phone number of 714-782-7770, extension 407.

37. That same day, Hanson responded to the text message by stating, "STOP."

38. On July 19, 2024, at approximately 11:42 a.m. PST, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number. The caller identified the company on whose behalf they were calling as "Nationwide Tax Advocates."

39. On July 19, 2024, at approximately 11:47 a.m. PST, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number, this time in the form of a text message. The text message appeared as having originated from phone number 949-334-5682. The text message asked Hanson to call "Richard Brower" with "Nationwide Tax Advocates" at phone number 714-782-7770, extension 407.

40. On July 19, 2024, at approximately 1:24 p.m. PST, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number, this time in the form of a text message. The text message appeared as having originated from phone number 949-334-5682. The text message identified "Nationwide Tax Advocates" and stated, "The fresh start program offers significant savings. Call me at 714-782-7770 ext. 412."

41. On July 19, 2024, at approximately 2:23 p.m. PST, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number. The person calling identified themselves as "Richard" with "Nationwide Tax Advocates."

42. On July 19, 2024, at approximately 2:24 p.m. PST, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number. The phone number that appeared on Hanson's caller ID was 714-782-7770.

43. On July 19, 2024, at approximately 2:25 p.m. PST, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number. The phone number that appeared on Hanson's caller ID was 714-782-7770.

44. On July 22, 2024, at approximately 8:45 a.m. PST, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number, this time in the form of a text message. The text message appeared as having originated from phone

number 949-334-5682. The text message again identified "Nationwide Tax Advocates." The text message stated, "The fresh start program offers significant savings. Call me at 714-782-7770 ext. 412."

45. On July 22, 2024, at 11:03 a.m. PST, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number. The phone number that appeared on Hanson's phone showed that the call originated from phone number 323-521-2120. The caller identified themselves as being with "Nationwide Tax Advocates."

46. On July 22, 2024, at 11:04 a.m. PST, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number. The phone number that appeared on Hanson's phone showed that the call originated from phone number 323-521-2120.

47. On September 23, 2024, at approximately 1:03 a.m. CST, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number, this time in the form of a text message.

48. On April 14, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number, this time in the form of a text message. The text identified the person as "Don" from "Nationwide Tax Advocates" and stated that he could be reached at 714-782-7770, extension 412.

49. On April 16, 2025, Defendant (or someone acting on Defendant's behalf) called Plaintiff on his phone number, this time in the form of a text message. The text message was a follow up text message from "Don."

50. On information and belief, Hanson may have received additional calls from or on behalf of Defendant besides those identified in this Complaint, and which may be revealed in the course of discovery.

51. The telephone solicitation calls placed to Hanson and the putative class members were placed with the purpose of selling Defendant's tax relief services.

52. Hanson never inquired about Defendant's services, nor did he provide any form of consent to be contacted by Defendant on his cell phone.

53. Hanson seeks recovery individually, and on behalf of the putative class members, for the communications sent to Hanson and the putative class members by or on behalf of Defendant in violation of the TCPA.

## DIRECT AND VICARIOUS LIABILITY

54. Without the benefit of discovery, and because Defendant disclosed its identity through the communications at issue, Hanson assumes Defendant directly placed the communications at issue.

55. However, if some or all the communications were placed by third-party/parties on behalf of Defendant, in the alternative, Defendant is vicariously liable for those calls.

56. On May 9, 2013, the FCC determined that telemarketers like Defendant could not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re: Dish Network, LLC,* 28 F.C.C. Rcd. 6574 at 6588 (May 9, 2013) (internal citations omitted).

57. Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA

liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

58. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593.

59. If Defendant directly placed the communications at issue to Hanson and the putative class members, Defendant is directly liable for the placing of those calls.

60. However, Defendant may have hired, encouraged, permitted, and enjoyed the benefits of mass telemarketing by third-party telemarketers.

61. If Defendant did not directly place the communications at issue to Hanson and the putative class members, Defendant's third-party telemarketers had actual and/or apparent authority to act on behalf of Defendant.

62. Likewise, Defendant also ratified its agents' violations of the TCPA by accepting sales from unlawful telemarketing communications.

63. Defendant controlled or had the right to control the marketing activities of those acting on its behalf.

64. Defendant acted as a principal to the telemarketing agent(s) acting on its behalf.

65. Defendant is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from its agents' TCPA violations.

66. For the count identified below, if Defendant directly placed the calls at issue to Hanson and the putative class members, it is directly liable. Alternatively, to the extent any calls were placed by a third-party agent(s) acting on Defendant's behalf, Defendant is vicariously liable for those unlawful communications.

## **CLASS ALLEGATIONS**

67. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3),

Plaintiff brings this lawsuit as a class action on behalf of himself, and all others similarly situated. This action satisfies the requirements of Rule 23.

68. Hanson seeks to represent the following classes:

> **DNC Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit until the date of class certification: (1) received two or more calls during a 12-month period in connection with the marketing of Defendant's products and/or services; (2) whose number was registered on the DNC List for more than 30 days at the time the calls were received; and, (3) whose phone number is registered to an individual and not a business.
>
> **Internal DNC Class:** All persons in the United States from four years prior to the filing of this action through class certification to whom: (1) Defendant sent text messages marketing its products or services, (2) Defendant sent more than one text message to the person in a twelve-month period, and, (3) Defendant sent such text messages after the person requested that Defendant stop sending them text messages.

69. Hanson reserves the right to add administrative subclass or add classes, and/or to amend the definition of the proposed classes, as this lawsuit proceeds.

70. The members of the proposed classes are so numerous that joinder of all members is impracticable. Hanson reasonably believes that hundreds or thousands of people have been harmed by Defendant's actions. The phone numbers of the members of the proposed classes are readily identifiable through records available to Defendant or those acting on their behalf.

71. Most members of the proposed classes have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

72. On information and belief, Defendant has called and likely continues to call people whose numbers are on the DNC List and/or who requested placement on Defendant's Internal DNC List. It is reasonable to expect that Defendant will continue to place such calls, absent this lawsuit.

73. Common questions of law and fact exist as to all members of the proposed classes and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed classes include, but are not limited to:

a. Whether Defendant's conduct of placing calls to phone numbers on the DNC List violates 47 U.S.C. § 227(c) and/or the TCPA's corresponding regulations;

b. Whether the calls were "solicitations," as defined by the TCPA;

c. Whether Defendant sent text messages to Hanson and the putative class members after they requested that Defendant no longer send them text messages;

d. Whether Defendant maintained and effectively implemented sufficient protocols to prevent the placing of calls to persons whose phone numbers are on the DNC List;

e. Whether Defendant's conduct violates the rules and regulations implementing the TCPA; and

f. Whether Hanson and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendant's conduct.

74. Hanson's claims are typical of the claims of the proposed class members because his claims arise from the same practice that gives rise to the claims of the members of the proposed class and are based on the same legal theories.

75. Hanson and his counsel will fairly and adequately protect the interests of the members of the proposed classes. Hanson's interests do not conflict with the interests of the proposed classes he seeks to represent, and he has retained lawyers who are competent and experienced in class action litigation, TCPA litigation and consumer law.

76. Hanson's counsel will vigorously litigate this case as a class action.

77. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable, if not impossible, and prosecuting hundreds or thousands of individual actions is not feasible. The size of individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

78. In contrast, a class action is superior in that it will benefit the court and litigating parties through efficiency, economy of scale and unitary adjudication resulting from supervision of the litigation by a single court.

79. Questions of law and fact, particularly (and not limited to) the propriety of placing telephone solicitations to persons on the DNC List and/or who should have been placed on Defendant's Internal DNC List, predominate over questions affecting only individual members.

80. Defendant has acted or refused to act on grounds that apply generally to the Class, making injunctive relief or corresponding declaratory relief appropriate with respect to the putative class members.

## COUNT I
### Violations of the Telephone Consumer Protection Act
### 47 U.S.C. § 227(c), *et seq.* (National DNC List Violations)

81. Hanson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

82. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for

each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

83. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the DNC List. *See* 47 U.S.C. § 227(c)(5)(A).

84. By placing telephone solicitations to Hanson's and the DNC Class members' phone numbers, which were registered on the DNC List, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c), and the TCPA's corresponding regulations.

85. In addition, the TCPA allows the Court to enjoin Defendant from placing text messages to phone numbers that are registered on the DNC List. *See* 47 U.S.C. § 227(c)(5)(A).

86. Defendant knew or had reason to know that Hanson's and DNC Class members' phone numbers were on the DNC List but placed telephone solicitation communications to them anyway.

87. Defendant willfully violated the TCPA by placing telephone solicitation communications to Hanson and the DNC Class members despite knowing or having reason to know they did not have consent to call them and knowing their numbers were registered on the DNC List.

88. Hanson and the DNC Class members are entitled to damages of up to $500.00 per violation for each call placed by Defendant in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff Jon Hanson, individually, and on behalf of all others similarly situated, requests that the Court:

a. Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Class, appointing Plaintiff as the DNC Class

representative, and appointing him counsel as class counsel;

b. Enter judgment in favor of Plaintiff and the DNC Class members and against Defendant for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c. Enter a judgment in favor of Plaintiff and the DNC Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d. Enter judgment in favor of Plaintiff and the DNC Class for all applicable pre-judgment and post-judgment interest amounts;

e. Enter judgment in favor of Plaintiff and the DNC Class for all costs, including the cost of class notice; and

f. Award Plaintiff and the DNC Class members such further and other relief the Court deems just and appropriate.

**Count II - Violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* (Internal DNC List violations)**

89. Hanson incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

90. The TCPA provides that "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may recover $500 for each violation, and up to $1,500 for each violation, if the violation is determined to be willful. *See* 47 U.S.C. § 227(c)(5).

91. The regulations prescribed under Section 227(c) require companies like Defendant, who engage in telemarketing to institute "procedures for maintaining a list of persons who request not to receive telemarketing calls on or behalf of that person or entity." *See* 47 C.F.R. § 64.1200(d).

92. These procedures must meet several minimum standards, including, but

not limited to:

> **(1)** ***Written policy.*** Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> **(2)** ***Training of personnel engaged in telemarketing.*** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> **(3)** ***Recording, disclosure of do-not-call requests.*** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> **(4)** ***Identification of sellers and telemarketers.*** A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> **(5)** ***Affiliated persons or entities.*** In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call

> request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> **(6)** ***Maintenance of do-not-call lists.*** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

*See* 47 C.F.R. § 64.1200(d)(1)-(6).

93. Defendant failed to maintain and/or implement these minimum standards by repeatedly sending telemarketing text messages to Hanson and the Internal DNC Class members after Hanson and the putative class members requested that Defendant stop sending them text messages, and Defendant promised to abide by such requests.

94. In addition, the TCPA allows the Court to enjoin Defendant from sending text messages to phone numbers that should have been placed on Defendant's internal do not call list. *See* 47 U.S.C. § 227(c)(5)(A).

95. By sending text messages to the phones of Hanson and the Internal DNC Class members after their numbers should have been placed on Defendant's internal do not call list, Defendant violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c) and the TCPA's corresponding regulations.

96. Defendant knew or should have known that Hanson and the Internal DNC Class did not wish to receive text messages as such persons expressly advised Defendant that they did not wish to receive text messages from Defendant.

97. Hanson and the Internal DNC Class are entitled to damages of up to $500.00 per violation for each text message sent by Defendant in violation of the TCPA and up to $1,500.00 per violation if the Court finds that Defendant willfully violated the TCPA.

WHEREFORE Plaintiff Jon Hanson, individually, and on behalf of all others similarly situated, requests that the Court:

a. Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed Class, appointing Plaintiff as the Internal DNC Class representative, and appointing him counsel as class counsel;

b. Enter judgment in favor of Plaintiff and the Internal DNC Class members and against Defendant for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of up to $500 per violation, and up to $1,500 per violation if Defendant willfully violated the TCPA;

c. Enter a judgment in favor of Plaintiff and the Internal DNC Class that enjoins Defendant from violating the TCPA's provisions and regulations;

d. Enter judgment in favor of Plaintiff and the Internal DNC Class for all applicable pre-judgment and post-judgment interest amounts;

e. Enter judgment in favor of Plaintiff and the Internal List Class for all costs, including the cost of class notice; and

f. Award Plaintiff and the Internal DNC Class members such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiff Jon Hanson demands a jury trial.

Dated: April 20, 2026

Respectfully submitted,

MILLER SHAH LLP

/s/James C. Shah
James C. Shah (SBN 260435)
Email: jcshah@millershah.com
Kolin C. Tang (SBN 279834)
Email: kctang@millershah.com
8730 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
Telephone: (866) 540-5505
Facsimile: (866) 300-7367

BUTSCH ROBERTS & ASSOCIATES LLC

/s/Christopher E. Roberts
Christopher E. Roberts (SBN 363586)
Email: CRoberts@butschroberts.com
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Telephone: (314) 863-5700

*Attorneys for Plaintiff*